( Decided November 21st, 1866.)

---

THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *vs.* JOHN HORN ET AL.

CONSTITUTIONAL LAW: BALTIMORE CITY,—GRADING AND PAVING STREETS OF.—The Act of 1864, ch. 188, empowered and directed the Mayor and City Council of Baltimore to pay the contractors for the work done and accepted by the city in grading North Avenue, and to borrow money for the purpose, and levy a tax for its repayment; and ch. 344, of the same session, empowered them to collect from the several owners of the property fronting on both sides of North Avenue, the sums of money theretofore assessed on the property belonging to them, as ascertained by the warrant of the City Commissioner dated Nov. 18th, 1857, with interest from that date, &c.—HELD :

That the passage of these Acts was a plain assumption of judicial power by the Legislature, in violation of the Constitution of the State, and in effect reversing the judgment of the Court of Appeals in the case of *Porter vs. Mayor & C. C. of Balto.*, 18 *Md. Rep.*, 284, and the said acts must be pronounced inoperative and void.

APPEAL from the Circuit Court of Baltimore city.

The appellees filed their petition in the Circuit Court of Baltimore city praying for an injunction to restrain the appellants from further proceedings in collecting the assessments levied upon the appellees, and other owners of lands, on the line of North Avenue, for the payment of the expenses of grading said avenue. The appellants answered the petition, justifying their action under the Acts of 1864, chs. 188 and 344. The cause was heard upon the petition and answer, and an order passed by the Court, ( ALEXANDER, J.,) restraining the appellants from further action. From this order this appeal was taken. For a full statement of the case see the opinion of this Court.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Wm. Price* and *C. L. L. Leary* for the appellants.

The only question raised upon this record is this, is the Act of Assembly of Maryland of 1864, chapter 344, entitled, "An Act to authorise the Mayor and City Council of Baltimore to collect and receive from the property holders on both sides of North Avenue, as well in Baltimore county as in the city of Baltimore, the sums severally assessed to them for the grading of said avenue," a valid exercise of legislative power? The intention of this law is apparent from the preamble, of the Act of the same session, chap. 188, entitled, "An Act to provide for paying the costs and expenses of grading North Avenue," &c., and from a consideration of the resolution of the Mayor and City Council,

No. 202, approved 26th of October, 1863, above referred
to. The object sought to be accomplished by this legisla-
tion was the payment of the expenses incurred by the cor-
poration in grading North Avenue. In the *Mayor & City
Council vs. Porter*, this Court says: "That the City Com-
missioner had no legal power or authority to cause North
Avenue to be graded, and that all his proceedings in the
premises were *coram non judice* and void, ( p. 298.) The
grading of this avenue was done under the authority of the
Act of 1856, chapter 164, but the provisions of that Act
were not pursued by the city authorities, and the decision
of the Court is founded upon the irregularity of these pro-
ceedings. The Act of 1856, ch. 164, in providing for the
payment of the expenses of this work, adopts, according to
the opinion of this Court in *Porter's* case, the principle
applied by the Act of 1838, ch. 226, of awarding damages
and assessing benefits, in paying the expense of opening,
widening and extending the streets of the city. It con-
templates the necessity of taking private property for pub-
lic use. Now, is the Legislature precluded from applying
by subsequent legislation a different principle, or from
adopting a different mode of estimating and paying the
expense of this work? We say that it is not. And this
is simply and substantially the effect of, and the office per-
formed by, the Act of 1864, chaper 344. In the opening
and widening of streets, it frequently becomes necessary to
take and to destroy private property, which cannot be law-
fully done without making compensation to the owner.
This is an exercise of the right of eminent domain which
was delegated by the Act of 1856, ch. 164. But in grad-
ing North Avenue no such power was exerted. No private
property has yet been taken for the public use. But the
work has been completed and paid for by the city, and the
Legislature in the exercise of its taxing power by the Act
of 1864, ch. 344, authorises the city to reimburse itself.

by collecting the assessments previously made, although made without the proper legislative sanction. It authorises a mode of paying the expenses of this work different from that provided by the prior Act of 1856. Instead of the system of awarding damages and assigning benefits, as was contemplated by the Act of 1856, ch. 164, in analogy to the law providing for the opening and widening of streets, the Act of 1864, by authorising the collection of the assessments made by the City Commissioner, simply adopts the mode of assessment according to the number of front feet, provided by law for paying the expense of grading and paving the streets of the city. It operates retroactively. It is a legislative ratification of the proceedings of the city under the Act of 1856, ch. 164, and relates back to the acts of the City Commissioner and makes them valid. It adopts retroactively the same mode of paying the expense of grading North Avenue, as is applied in grading and paving the streets of Baltimore city. It is nothing more than an exertion of the taxing power of the Legislature, while the Act of 1856, ch. 164, is an exercise of the right of eminent domain ; and the Legislature has an equal constitutional right to pass either, and to select and apply either system in paying the expenses of this great improvement. See *Moale vs. Mayor and City Council*, 5 *Md. Rep.*, as to the distinction taken between the exercise of the right of eminent domain and of the taxing power. "That the imposition of a paving tax is an exercise of the taxing power, and not of the right of eminent domain, we entertain no doubt." *Mayor, &c., vs. Greenmount Cemetery*, 7 *Md. Rep.*, 536.

The constitutionality of the laws and ordinances by which the grading and paving of streets in the city of Baltimore are regulated, has been repeatedly affirmed by this Court. *Stewart vs. Mayor, &c.*, 7 *Md. Rep.*, 500. *Howard vs. First Independent Church*, 18 *Md. Rep.*, 455.

There can be no doubt of the power of the Legislature to

pass retrospective laws affecting civil rights and remedies, where private vested rights are not invaded, and no vested rights have been disturbed in this case. *Goshen vs. Stonington,* 4 *Conn.,* 209. *Welch vs. Wadsworth,* 30 *Conn.,* 149. *Simmons vs. Hanover,* 23 *Pick.,* 194. *Baugher vs. Nelson,* 9 *Gill,* 305, 306.

The Act of 1864, ch. 344, cannot be construed as an exercise of judicial power. It authorises the Mayor and City Council "to collect from the several owners of the property fronting on both sides of North Avenue the sums of money heretofore assessed," &c.

How then can the city collect these assessments except by appealing to the judicial authority of the State? And how can this Act of Assembly be tortured into a "legislative judgment" against the citizen, when all the parties affected by its operation can be reached only by judicial process, and can avail themselves of the "trial by jury" at their own option.

*Wm. F. Frick* and *Brown & Brune* for the appellees.

There are various grounds upon which this Act must be determined to be unconstitutional and void, the most prominent of which is:

1. That it is undoubtedly an exercise of judicial power. As such, it is in direct violation of the 8th and 23rd Articles of the Declaration of Rights. These Articles, as expressed in the same language in former Constitutions, have been repeatedly construed and expounded by this Court and declared to be intended as salutary restraints upon the Legislative Department, which it is the province of the Judicial Department to enforce. If the Legislature incautiously, or otherwise, steps beyond the strict limits of its authority, and attempts in any way to exercise judicial power, it is the duty of the Courts to declare its act unwarranted by the Constitution, that being the paramount law to which

all departments of the Government must yield.    Though it is difficult to lay down any general rule by which it may be determined whether the Legislative Department oversteps the limit of constitutional restraint, it is quite clear, that it has no power to interfere so as to change or affect the decision of cases pending in the Courts according to the "law of the land;" that is, according to "the due course and process of the law," to deprive the citizen, in any case affecting his life, liberty or property, of the right to the "judgment of his peers;" that is, to "trial by jury," or to change, modify or set aside the judgments or decrees of Courts when made, which would (except for such legislative interference) be final and conclusive between the parties.    These are well recognized special instances in which legislative action is unauthorized and void.

It would be difficult to present a plainer case, than this, of improper interference by the Legislative with the Judicial Department.    The validity of the assessments created "by the warrant of the City Commissioner, of November 18th, 1857," and the right of the Mayor and City Council of Baltimore to collect the same, constituted the immediate subject matter of litigation in the case of *Porter vs. The Mayor and City Council of Baltimore*, in the Circuit Court of Baltimore city, and afterwards in this tribunal as a Court of last resort.    That subject matter was one purely and wholly of judicial cognizance and determination.    It was adjudged "according to due course and process of law," and by and through the final decree of this Court, the assessments in question were declared void, and the Mayor and City Council of Baltimore, by the authority of this Court, were perpetually enjoined and prohibited from any proceedings in, or attempt at, their collection.    And yet, the Legislature assumes, in the face of this judicial action, to "authorize and empower" the Mayor and City Council of Baltimore to collect these identical assessments.    The

mere statement of the case seems to be a sufficient argument. *Constitution of* 1864, *Arts.* 8 *and* 23 *of the Declaration of Rights. Crane vs. Meginnis,* 1 *G. & J.,* 476. *Regents University of Maryland vs. Williams,* 9 *G. & J.,* 410, 411. *Berrett vs. Oliver,* 7 *G. & J.,* 206. *Miller vs. State, use Fiery,* 8 *Gill,* 148. *Wright vs. Wright's Lessee,* 2 *Md. Rep.,* 452. *Denny vs. Mattoon & Others,* 2 *Allen,* 377. *Menzies vs. Dentler,* 33 *Penna. State Reports,* 495. *Mc Daniel vs. Correll,* 19 *Illinois,* 226. *Reiser vs. Wm. Tell Saving Fund,* 39 *Penna. State Rep.,* 144.

II. Even supposing that this question of power could properly be considered at all, without reference to the previous action of the Judicial Department in the premises, and that the Act could be treated as an original exercise of legislative power, it is liable to equally fatal objections. It proceeds upon the theory that the "assessments," &c., "of November 18th, 1857," were not collectable by any law then in existence, and it authorizes the Mayor and City Council of Baltimore to collect them, and declares them "to be a lien on the property assessed." Now this is obviously not a case in which a general taxing power is exercised by the Legislature.

It is a special and local tax or assessment levied upon certain property to pay the cost of a public improvement, to wit, the grading of North Avenue. It is not a general tax imposed for the support of the Government, or of the municipal corporation of the city of Baltimore, or for any other object or purpose for which a general tax would be necessary or proper. It cannot, therefore, be supported or justified upon the ground of the power inherent in the Legislature, to lay general taxes for public purposes, that is, to put or set burdens, charges or impositions upon persons or property for public uses.

It is to be supported upon an entirely different ground ; the theory upon which these special taxes have been held

to be allowable is, that the property taxed or assessed, is benefitted by the improvement. *Alexander vs. Mayor & C. C. of Balto.*, 5 *Gill*, 395, 396, 397.

It matters not to enquire whether the Legislature, in authorizing such assessments, proceeds by virtue of its taxing power, or in the exercise of authority growing out of, or connected with, its right of eminent domain. It is sufficiently clear, that "the benefit" to the property assessed is the only foundation of, and justification for, the assessment of the tax. It is not, therefore, laid as a "burden, imposition or charge" upon the property, as its rateable contribution to public objects and uses, but as an assessment or ascertainment of a sum which the property ought to pay, by reason of the benefit or enhanced value which it has derived from some neighboring public improvement. In this sense, it is not a "burden," or a tax in the nature of a burden ; it is a charge for which the equivalent is immediately and directly rendered to the owner of the property. And the result, therefore, necessarily follows, that the tax can only be lawful where the corresponding "benefit" accrues. Now this is a matter of fact, which the Legislature has the power to provide for ascertaining, but which it has no authority arbitrarily to determine for itself. It is a question affecting the property of certain citizens only, and as such, they have the right to require that it shall be judicially determined, and "by the judgment of the peers," that is, by a jury trial. Hence it is, that when the question arose in this Court upon the constitutionality of the Act of 1838, chapter 226, under which the city was authorized to "assess upon property benefitted," the expenses of opening streets, the law and the city ordinances passed under it, were declared to be constitutional, "because the aggrieved party may appeal to the City Court, and contest the correctness of the assessments made by the commission-

ers, before a jury of the country." *Alexander vs. The Mayor, &c.*, 5 *Gill*, 396.

But it cannot be pretended that the Legislature, in this respect, can take the place of the commissioners and jury ; that it can determine conclusively for itself, whether the citizen's property is benefitted or not, and to what amount it is benefitted ; and pass a legislative judgment or decree that he shall pay a particular sum, and that the same shall be, until paid, a lien upon his property ; and that he is to have no benefit of an appeal to Court or jury from this legislative judgment. And yet, that is precisely what this act attempts to accomplish, regarding it not in the light of the 1st point, as a reversal of the decree of this Court, but under this 2nd head, as an original exercise of a power of taxation or assessment. *Steuart vs. M. & C. C. of Balto.*, 7 *Md. Rep.*, 511, *et seq.*

III. There are various other special objections to the Act, growing out of its structure, and the avowed grounds and purposes of its passage. The most prominent is this, the question under the Act of 1856, in the case of *Porter*, in this Court, was in fact between the contractors and the property holders. The former had not been paid, and the city sued virtually for their use. This Court having determined that the property holders were not bound to any body, because the assessments against them were void, the Legislature passed the Act of 1864, chapter 188, imposing upon the city corporation the responsibility of paying the contractors, because it had passed an ordinance accepting the work, and declaring it to be "for the public good." The money was provided to be raised by a general tax on all taxable property in the city, and the money has been so raised, and the work fully paid for to the contractors.

Now obviously, under and by means of this Act, (chapter 188,) the debt for which "the assessments of November 18th, 1857," were levied, has been fully paid and dis-

charged, and there is, therefore, no lawful purpose for which those assessments can now be collected by the city.'

They were levied "to pay the expenses of grading North Avenue." Even assuming them to have been originally lawfully levied for that purpose, it is quite clear, that being levied as a special and local tax, for one object, they could not be collected for the purpose of devoting them to another and very different object. And yet, that is precisely what the Legislature has sought to accomplish by the Act of 1864, chapter 344. It would appear from that Act, that some of the parties assessed had chosen originally to pay the tax without question. In tender consideration for the mistake committed by these parties in paying, voluntarily, an unlawful tax, the Legislature directs that those parties who raised the question of its legality, and received the decision of this Court in their favor, shall, *non obstante* that judicial determination, still pay the tax for the benefit ( to the extent of fifty cents in the dollar,) of the parties who held back from the risk and expenses of litigation. Upon what theory of right this extraordinary measure was planned and adopted it is not easy to understand. The only explanation to be offered of it is to be found in the fact, that the Legislature allowed to the recusant property holders, the privilege of a deduction of fifty per cent. from these assessments, provided they paid them within twelve months ; and could not, without an obvious show of injustice, put them upon a better footing than those who had submissively paid the whole claim. But no stronger evidence can be found of the convictions of the Legislature itself, that the law which it was passing was an arbitrary exercise of unconstitutional power, than this very provision. It was obviously inserted for no other purpose than to operate *"in terrorem"* upon the property holders, and to offer them a premium of fifty per cent., not

to make a question about the legality of the Act. And it was no doubt supposed that it would have that effect.

As the law stands, it is a legislative judgment against one citizen, against whom no lawful claim exists, in favor of another citizen who has no lawful right whatsoever to the amount against anybody. What is to become of the balance of the fund to be raised under the Act, after the payment of the fifty per cent. to the few parties who originally paid the whole assessment, does not appear. So far, therefore, as that portion of it is concerned, it is a legislative judgment for the payment of money, without specifying any purpose to which it is to be applied. *Medford vs. Learned,* 16 *Mass.,* 216.

WEISEL, J., delivered the opinion of this Court.

The record in this case shows that the case of *Porter vs. The Mayor and City Council of Baltimore,* 18 *Md. Rep.,* 284, which involved the same question of right under the law of 1856, ch. 164, also disposed of that question in this case, and consequently the Court below, after that decision and in pursuance of it, on the 23d of May, 1862, perpetuated the injunction in this case. By that decision it was settled by this Court that the powers conferred by that Act were not complied with by the Mayor and City Council of Baltimore, and that the work done in grading North Avenue, and the assessment of the tax for its payment, were unauthorized, and that the payment of the tax could not be enforced by a sale of the property levied on for that purpose; and also that the ordinance of the city which was afterwards, on the 9th of December, 1859, passed to confirm the grading of the avenue, was without authority of law, of no binding force, had not the effect of ratifying the acts of the City Commissioners or in any manner changing the rights of the parties litigant, pp. 300, 301.

In this dilemma the city authorities adopted measures

for procuring further legislation on the subject, and at January session of 1864, the General Assembly passed two laws, one, ch. 188, empowering and directing the Mayor and City Council of Baltimore to pay the contractors for the work done and accepted by the city, and to borrow money for the purpose, and to levy a tax for its repayment. The other, ch. 344, after reciting the former laws and proceedings, authorized and empowered the said Mayor and City Council to collect from the several owners of the property fronting on both sides of North Avenue, the sums of money theretofore assessed on the property belonging to them, as ascertained by the warrant of the City Commissioner, dated November 18th 1857, with interest from said dates, with a provision by which the owners could settle within a specified time at a reduced rate, but failing so to do, were declared liable for the whole, and the amount was made a lien upon their property.

The city paid the contractors, and after the time limited in the last named Act for reduced settlements with the owners, the collector of the city, Augustus M. Price, gave notice to the owners that unless the amounts so assessed were paid on or before the 15th of March, 1866, he would proceed to enforce payment by a sale of the lots. To stay this proceeding on the part of the city and its collector, as well as to procure an attachment for contempt for the violation of the injunction before granted and perpetuated, the appellees filed their petition, to which the Mayor and Council and collector filed their answers, relying for their justification, and the authority for their acts and pretensions in the premises, on the said Act of Assembly of 1864, chap. 344, which, they insisted, invested them with full, legal and effective powers to enforce the collection of said moneys.

At the hearing of the application of the petitioners for the protection claimed, the parties by agreement, all advantages in other respects being waived, submitted as the only

question to be determined the constitutionality of the said Acts of Assembly of 1864. The Court below determined the Act of 1864, ch. 344, inoperative and void, and passed an order perpetually enjoining and restraining the defendants from collecting the assessments and making the threatened sale. From this order this appeal has been taken.

The only question therefore presented to this Court by the record, and the briefs, and arguments of counsel, is as to the constitutional validity of the Act of 1864, ch. 344, under which these renewed proceedings of the appellants were attempted.

The most prominent objection to this law, taken in the argument by the counsel of the appellees, was that the Legislature in passing it, exercised judicial power, which, by the Declaration of Rights, and numerous decisions in this State and other States of the Union, which separate the judicial from the legislative and executive powers of government, it could not assume and exercise. And this position, we think, is well taken. When this law was passed, the rights of the parties under the law of 1856, ch. 164, had been judicially determined by this Court. In the case of *Porter vs. The Mayor & City Council*, this Court had adjudged that the parties assessed in certain proceedings under that law, were not liable for the assessments, and had perpetually enjoined the city authorities from proceeding to collect them; and yet the law of 1864, ch. 344, passed after that decision, expressly authorised those authorities to proceed and collect them. It adjudged those parties to pay that which this Court, in a regular proceeding, determined they were not bound to pay. It, in effect, and that most plainly, reversed the judgment of this Court. That which this Court said was illegally done, or done without authority of law, or in contravention of law, and that the parties could not be assessed for, this Act of Assembly clearly declares shall be paid for by the parties,

although they were relieved from that payment by the final determination of this Court. There certainly could not be a more plain assumption of judicial power by the Legislature, than was exercised by the enactment of the law of 1864, ch. 344, and as such, this law must be pronounced inoperative and void. It is unnecessary to repeat the reasons and grounds which have guided the Courts in adjudications of this kind. They have heretofore been ably set forth by this Court in the cases of *Crane vs. Meginnis,* 1 *G. & J.,* 476 ; *Berrett vs. Oliver,* 7 *G. & J.,* 206 ; *Miller vs. State, use of Fiery,* 8 *Gill,* 148 ; *Wright vs. Wright's Lessee,* 2 *Md. Rep.,* 452. The case of *Denny vs. Mattoon & others,* 2 *Allen (Mass. Rep.,)* 377, is directly in point, as well as the case of *Daniel vs. Correll,* 19 *Ills.,* 226.

There is, also, great force in the other points presented by the appellees, especially the third, but we deem it unnecessary to pass upon them.

Regarding the Act of Assembly of 1864, ch. 344, void for the reasons and upon the authorities stated and referred to by us in this opinion, the decree of the Circuit Court of Baltimore city, perpetually enjoining and restraining the appellants from collecting or attempting to collect the assessments for grading North Avenue, mentioned in said Act of 1864, ch. 344, and as thereby attempted to be authorised, must be affirmed, with costs to the appellees in both Courts.

*Decree affirmed, with costs, &c.*