# WHEELING.

## CHRISTIE *v.* MALDEN.

Submitted January 16, 1884—Decided March 29, 1884.

1. A suit in equity will not lie to restrain the collection of a tax on the sole ground that it is improper.

2. Courts of equity have jurisdiction to prevent municipal corporations from abusing or exceeding their powers.   (p. 669.)

3. If a municipal corporation erroneously or illegally taxes property, which it has the power to tax in a proper manner, the remedy for such error must be sought generally in a court of law ; but if it acts *ultra vires* by taxing property not subject to taxation, or taxes property, which it may tax, beyond the limit fixed by the organic law conferring the power to tax, a court of equity will on a bill filed by the owner of the property so illegally or excessively taxed, enjoin the collection of such tax.   (p. 670.)

4. A municipal corporation possesses and can exercise the following powers and no others :  1st, those granted in express words by its charter or the general statutes under which it is incorporated ; 2d, those necessarily or fairly implied in or incident to the powers thus expressly granted ; and 3d, those essential to the declared purposes of the corporation—not simply convenient but indispensable.  (p. 672.)

5. A town incorporated under chapter 47 of the Code of this State can not assess and collect wharfage from the proprietor of a ferry for the use of a ferry-landing within its corporate limits ; nor can it tax such ferry except as property, at the rate it may tax other property within its corporate limits.   (p. 672.)

The opinion of the court contains a sufficient statement of the facts of the case.

*W. A. McCorkle* for appellant.

*Knight & Couch* for appellee.

SNYDER, JUDGE:

David Ruffner, the owner of the land on the south side of the Kanawha river in Kanawha county on which the present town of Malden is located, laid off said land into lots, streets and alleys and sold the lots to William Dickinson and others. By deed dated March 1, 1831, he conveyed said lots, streets, alleys and the bank of the said river fronting along said land to the middle of the river to Levi Welch and others, trustees, upon the trusts and for the uses and purposes following: to permit said Dickinson and others to have, use and enjoy the said lots for their own purposes, with power to said trustees to sell and convey the same in fee, when, and to such persons, as the said Dickinson and others may direct; and to hold the said streets, alleys and river-bank "for the public and common use of all the present and future owners of the lots of said town, for their joint and common convenience, accommodation and advantage, subject to their government and control (for the uses aforesaid) and to the trustees or corporation of said town, should it become incorporated, *  *  * and upon the further trust that they, or the survivors or survivor of them or the heirs of the survivor of them, may, at their own pleasure, and shall at the pleasure of a majority of the inhabitants of said town or of the trustees or corporation of the same, and at the expense of the inhabitants, trustees or corporation, convey the said alleys, streets and bank to other trustees in trust for the same trusts, uses and purposes as herein expressed in relation to the same."

The town of Malden was by an order of the circuit court of Kanawha county, made June 17, 1880, incorporated under the provisions of chapter 47 of the Code of this State.

On the application of H. H. Wood, the owner of the land along the north side of said river opposite said town, the county court of said county by an order, entered March 10, 1845, granted to said Wood a franchise to operate a ferry from his land across the the river to the town.   Subsequently, January 22, 1878, the said land, ferry and ferry-franchise were, by deed, con-

veyed to Samuel Christie, who, on September 11, 1882, filed his bill in the circuit court of Kanawha county against the town of Malden and Joseph Wallace, the sergeant thereof, alleging therein that he was the owner of said ferry and ferry-franchise and the landings thereto; that the said ferry had been in possession of and operated by him and those under whom he claims for more than thirty years; that his ferry-landing on the Malden side of the river is within the limits of the river-front dedicated by Daniel Ruffner, by the aforesaid deed, to the public use; that said town has recently commenced to charge him wharfage for landing his ferry boats on his own landing, on the town-side of the river, at the rate of six dollars and twenty-five cents per month without any lawful power or right to do so, and will continue to make such charge and collect the same unless prevented by the court; that it has already made charges against him amounting to sixty-two dollars and fifty cent for such illegal wharfage and the same is now in the hands of the defendant Wallace, its sergeant, for collection; that his ferry is assessed for taxation at the valuation of one thousand dollars in the manner required by law; and that said town has no right to levy a tax upon it in any other way. The prayer is for an injunction to restrain said town and its officers from collecting said charge for wharfage and from making any further charge therefor against him for landing his ferry boats at said landing; and for general relief.

The injunction prayed for was granted. The defendant-town demurred to and also answered the plaintiff's bill, but the answer denied none of its material allegations, and on December 23, 1882, the court entered a decree overruling the demurrer and perpetuating the injunction with costs. From this decree the town appealed.

The first question presented is as to the jurisdicton to enjoin the defendant. It may be conceded to be the established law of this State, that a court of equity will not restrain the collection of an assessment or tax imposed by an incorporated town on the sole ground that the tax is illegal, or where the party complaining has a plain and adequate remedy at law—*Douglass* v. *Harrisville*, 9 W. Va. 162. But it is equally well established in this State and elsewhere, that

where the case presents special circumstances, such as would prevent a multiplicity of suits or irreparable damages, equity has jurisdiction—*Corrothers* v. *Board of Education, &c.*, 16 W. Va. 527; *C. & O. Ry. Co.* v. *Miller*, 19 *Id.* 408; *Ball* v. *Read*, 13 Gratt. 78. In the latter case the court said: " Chancery will interpose by injunction to prevent the threatened wrong and provide a remedy which shall at once reach the whole mischief and secure the rights of all, both for the present and the future; and its jurisdiction in such cases would seem to be well defined and fully sustained by authority."

In 2 Dill on M. Corp. § 922, that author, upon a survey of the decisions in England and the United States, concludes that equity will entertain jurisdiction against a municipal corporation and its officers whenever they "are acting *ultra vires*, or assuming or exercising a power over the property of the citizen, or over the corporate property or funds, which the law does not confer upon them, and where such illegal acts affect injuriously the property-owner or the taxable inhabitant. But if in these cases the property-owner or the taxable inhabitant can have a full and adequate remedy at law, equity will not interfere but will leave them to their legal remedy."

The distinction established and recognized by the decisions between the cases, in which equity will and in which it will not take jurisdiction, is well defined by Lord Cottenham in *Frewin* v. *Lewis*, 4 Mylne & Craig, 249, 255. He says: "So long as the public functionaries strictly confine themselves within the exercise of those duties which are confided to them by law, this (chancery) court will not interfere   *   * to see whether any regulation they make is good or bad, but if they are departing from that power which the law has vested in them, if they are assuming to themselves a power over property which the law does not give them, this Court no longer treats them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority. While the court avoids interfering with what they do while keeping within the limits of their jurisdiction, it takes care to confine them within those limits; if they go beyond the line of their authority, and

infringe or violate the rights of others, they become, like all other individuals, amenable to the jurisdiction of this Court by injunction"—*Carter* v. *Chicago*, 57 Ill. 288; *Sherlock* v. *Winnetka*, 59 *Id.* 389.

In my judgment the proper rule, founded on both reason and the authorities, is that whenever the authorities of a municipal corporation make an illegal or an improper assessment of taxes on a person or subject, which they have the legal right and authority to tax properly, the remedy of the party so illegally taxed is confined to a court of law; but where such authorities illegally assess and attempt to collect a tax from a person or a subject which they have no legal right to tax, or levy an improper tax for which a court of law could not afford an adequate remedy, because redress in that court could only be had by repeated actions, then a court of equity will take jurisdiction and enjoin the assessment and collection of such tax. That is, if the municipal authorities erroneously tax property which they have the legal right and power to tax, the remedy must be sought at law; but if they tax property not legally taxable, or if they exceed the limit prescribed by the statute conferring their power to tax, their action being *ultra vires* and void, equity has jurisdiction to grant relief—*Baltimore* v. *Horn*, 26 Md. 194; *Baltimore* v. *Gill*, 31 Md. 375; *Place* v. *Providence*, 12 R. I. 1; *Crompton* v. *Zabriskie*, 101 U. S. 601, 609; *Kuhn* v. *The Board of Education, &c.*, 4 W. Va. 499.

In the case before us the tax complained of is made collectable by monthly instalments; and while the plaintiff might have a remedy at law for each illegal collection, his remedy would be much more effectual and perfect in equity; and as the acts of the town would be in their nature continuing and to be renewed each successive month, to restrict the plaintiff to his legal remedies would be to consign him to interminable litigation and involve a multiplicity of actions. But if the town has no legal authority to levy the tax on the plaintiff here complained of and by so doing its officers acted *ultra vires*, then clearly equity has jurisdiction to enjoin said void and illegal assessment and tax. This brings us to the enquiry, whether the town in levying this tax acted *ultra vires* and beyond its jurisdiction.

It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: *First*, those granted in express words by its charter, or the general law under which it is incorporated; *second*, those necessarily or fairly implied in or incident to the powers thus expressly granted; and *third*, those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every such corporation the charter or statute by which it is created is its organic law. Neither the corporation nor its officers can do any act or exercise any power not authorized thereby. All acts beyond the scope of the powers granted are void—Dill. on M. Corp. § 89; *Somerville* v. *Dickerman*, 127 Mass. 272; *Francis* v. *Troy*, 74 N. Y. 338; *State* v. *Passaic*, 41 N. J. L. 90; *Lord* v. *Oconto*, 47 Wis. 386.

The town of Malden was incorporated in 1880, under chapter 47 of the Code. The said chapter was on March 14, 1882, amended and re-enacted by the Legislature—Acts 1882 chap. 92. Under the fundamental principles of law just stated it then follows that unless the power to levy the tax in question is authorized by said act of March 14, 1882, it must be held not to exist.

The ferry-seat of the plaintiff appears to be on his own land on the opposite side of the river from the defendant town and without its corporate limits. It is there the plaintiff is bound to keep his boats and his hands. He is under no obligation to keep either on the town-side of the river, and in the absence of any fact in the record to the contrary we are bound to presume his boats and materials for his ferry are not kept within the corporate limits of the town— *Somerville* v. *Wimbish*, 7 Gratt. 205, 230. If then the plaintiff's ferry-seat and boats are not within the corporate limits of the town although the opposite landing is within said limits, it may be questioned whether the town can tax the ferry in any manner; but it is unnecessary to decide this question as the case must be disposed of upon another point.

The statute provides, that ferries shall be assessed for taxes for State purposes at a valuation to be ascertained by multi-

plying their annual value or rent by ten—(Acts 1881, chap. 12, sec. 63); and that taxes for town-purposes shall be levied only upon the values of property ascertained for State purposes—*Id.* sec. 100.

The plaintiff's bill avers, and it is not denied by the answer, that this ferry is assessed for State-purposes at the valuation of one thousand dollars, and that the tax assessed by the town upon the ferry is six dollars and twenty-five cents per month, which is equal to seventy-five dollars per year or seven and a half *per cent.* on its taxable value.

The statute provides that the town-council shall *annually* order a levy to defray and pay the expenses and liabilities of the town (Acts 1882, ch. 92, sec. 30); and provides that: "The levy so ordered shall be upon all dogs in the said city, town or village, and upon all the real and personal estate therein subject to State and county-taxes; provided that the taxes so levied upon property *shall not exceed one dollar on every one hundred dollars* of the value thereof"—*Id.* sec. 31.

These statutes, which are, as we have seen, the organic law of the corporation, declare that the power of the town to tax property shall be confined to the property within the town which is subject to State and county taxes, and that such property may be annually taxed; but they provide expressly that such taxes shall not exceed one *per cent.* of its taxable value. The tax levied on this ferry and sought to be enjoined is seven and one half *per cent.*, being six and one half per cent. in excess of the limitation prescribed by the statute. If, therefore, it be conceded that the town has the right to tax this ferry as property, it has clearly exceeded its authority and unquestionably, so much at least as the assessment exceeds one *per cent.*, is *ultra vires* and void.

But the effect of the conclusion, just announced, is sought to be avoided by asserting that this is not a controversy about taxation; but concerning the right of the town as a riparian proprietor to charge wharfage for the town-wharf as an incident necessary to the exercise of its corporate authority and ownership of corporate property. It is also claimed that the deed from David Ruffner confers upon the town the right to charge wharfage. It is not pretended that the statutes, from which the town derives its authority, confer any right upon

the town to charge wharfage for the use of the river-bank in front of it. In fact the town does not claim to have a wharf within its corporate limits. A ferry-landing is certainly not a wharf in any legal or proper sense. The counsel for the town cites 1 Dill. on M. Corp. § 109, to show that, if a municipal corporation is a riparian owner, it will probably, in the absence of any restrictive provision in its organic act, have the implied authority *to erect* a wharf thereon and as an incidental right have the same authority as a private riparian owner to charge compensation for its use. The same authority, however, says that while a private owner may erect a private wharf, which the public may use by the consent of the owner, yet, according to the better view, the right to erect public wharves and to demand tolls or fixed rates of wharfage is a franchise, which must have its origin in a legislative grant— Sec. 108; *People* v. *Wharf Co.*, 31 Cal. 34; *Wiswall* v. *Hall*, 3 Paige Ch. 313.

Our statute authorizes the owner of land on a water-course to erect a wharf thereon and provides for abating the same— (Acts of 1881, chapter 14 sections 40 and 41—) but gives no authority to such owner to charge tolls or wharfage for the use of such wharf. It follows, therefore, that the town could not have derived any right under the deed from Ruffner, nor did it have the right as riparian owner of the river-bank to charge wharfage. Ruffner as the owner of the bank of the river had no such right and of course by his conveyance could confer none upon his grantees. Neither can I find any statute, conferring upon any town, created under the general law of this State, any power or authority to charge tolls or wharfage for any landing or wharf within its corporate limits. Therefore, in every view of this case, I am of the opinion that the circuit court did not err in overruling the demurrer to the plaintiff's bill and perpetuating the injunction awarded him.

The decree of said court of December 22, 1882, is affirmed with costs and damages.

AFFIRMED.