CORROTHERS *et al.*

*v.*

## BOARD OF EDUCATION OF CLINTON DISTRICT, MONON-GALIA COUNTY.

Decided April 24, 1880.

1. A suit in equity will not lie to restrain the collection of a tax on the sole ground that the tax is illegal. There must exist in addition special circumstances bringing the case under some recognized head of equity jurisdiction, such as, that the enforcement of the tax would lead to a multiplicity of suits, &c.

2. Where the case is thus brought under some recognized head of equity jurisdiction, as where the plaintiff brings the suit in behalf of himself and all other tax-payers in the district, who are to suffer by the tax imposed, if the bill shows that the tax is illegal, to avoid a multiplicity of suits equity will take jurisdiction by injunction.

3. Where equity has jurisdiction of a subject, and the Legislature by statute gives a remedy at law for the injury complained of, and does not by the terms of said statute take away the equitable jurisdiction, it must be considered as an additional remedy ; and the equitable jurisdiction is not thereby ousted.

4. If a board of education refuses to do an act required by statute to be done at a particular time, and the act is such that the board could be compelled by *mandamus* to perform it, the board may afterwards on its own motion do the act.

1880
Special Term.

Corrothers *et al.*
*v.*
Board of Education of Clinton District, Monongalia Co.

Appeal from and *supersedeas* to two orders of the circuit court of the county of Monongalia, made on the 18th day of August, 1876, in a cause in chancery in said court

1880
Special Term.

Corrothers *et al.*
v.
Board of Educa-
tion of Clinton
District, Monon-
galia Co. then pending, wherein John W. Corrothers and others were plaintiffs and the Board of Education of Clinton District of the county of Monongalia was defendant, allowed upon the petition of said plaintiffs.

Hon. Charles S. Lewis, judge of the second judicial circuit made the orders appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case:

In March, 1876, the plaintiffs presented to the judge of the circuit court of Monongalia county the following bill of complaint praying an injunction:

" To THE HON. CHARLES S. LEWIS,

" *Judge of the circuit court held in and for Monongalia county, State of West Virginia:*

" The prayer, petition and bill of complaint of John W. Corrothers, Thomas H. Watson, William E. Watson and Thomas F. Watson, partners under the firm name of ——, John W. Lanham, Eliza L. Morgan, Zadoc McBee, Peter Price, Zadoc Thomas McBee, Thomas Price, Coleman Trickett, Andrew J. Kincaid, Joseph Trickett and Oliver Travis, citizens and tax-payers of and residents of the district of Clinton, in the county and State aforesaid, on behalf of themselves and the other tax-payers in Clinton district, in the said county of Monongalia:

" Humbly complaining, *respectfully* represent unto your honor that they are residents and tax-payers of said district, and as such cheerfully, as good citizens, obey and discharge all public duties fairly and lawfully imposed upon them, and as such have hitherto ever since the creation or establishment of the common or free school system of this State, materially contributed thereto; that the orators are advised and so charge that the said district of Clinton was and is sub-divided into — sub-districts for school purposes, and that by virtue of chapter one hundred and twenty three of the Acts of 1872–3,

passed April 12, 1872, entitled " An act to amend and
re-enact the school law of the State," Nicholas C. Van-
dervort, Isaac Reed and Samuel T. Shuttleworth, of said
district of Clinton, were duly elected and qualified as
the board of education of and for said district of Clinton,
for the term of two years from the 1st day of September,
1873, and, as the orators are informed and believe, until
their successors should be duly elected and qualified;
that by section two of said act it is provided that " the
board of education shall consist of a president and two
commissioners. An election for the officers shall be held
at the school-house of each sub-district from nine o'clock
in the morning till six P. M. of the second Friday of Au-
gust, 1873, and every two years thereafter." The ora-
tors have no positive or personal knowledge whether
such elections were held in each and all of said sub-
districts on the second Friday of August, 1875, or not,
but are advised that some kind of formal or informal
elections were so held in some or perhaps all of said sub-
districts on that day; but whether they were regularly
or irregularly, lawfully or unlawfully held, the orators
are not personally or properly informed, but from infor-
mation derived from others, the orators believe and so
charge that said elections were in fact irregularly, im-
properly and unlawfully held and conducted. The ora-
tors are also informed and so charge that the records of
such elections were not properly or lawfully forwarded
or returned to the secretary of the said board of educa-
tion; that in fact, as the orators are informed, the said
elections were so badly, loosely and irregularly conducted
and held, and forwarded and returned to the said secre-
tary of said board as not only to render it difficult, but
almost, if not altogether, impossible for the said board or
any one else to rightly determine who were elected as
members of said board, or what was the will of the voters
as to the question of levy for school purposes; that by
the said second section of said chapter it is further pro-
vided: " The board of education for each district shall

assemble on the second Monday after said election, and a majority of the same being present, shall open and examine the election records of the several sub-districts. They shall ascertain therefrom who has received the largest number of votes for the several officers of the district board of education, and give certificates of their election to the persons entitled thereto." The orators are advised and so believe and charge that the said board of education for said district did in fact meet on the said *second Monday* after said election as so required by law, at the Price school-house in sub-district No. 10, of said Clinton district, said second Monday being the 23d day of August, 1875. Present: N. C. Vandevort, president, and Isaac Reed and S. T. Shuttlesworth, commissioners. At which time the said board, in accordance with section second, chapter one hundred and twenty three, acts of 1872–3, school law of West Virginia, proceeded to open and examine the election records of the several sub-districts of said district," * * * " and declared the said elections held in the several sub-districts of said district null and void." "Thereupon a motion was made to set the same (the said elections meaning) aside. After a spirited debate on said motion by said board, the motion prevailed." All of which official declarations, acts and proceedings were at the time, as the orators are informed, recorded by the secretary of said board in a book kept by said secretary and board for the purpose of recording therein the official proceedings of said board, and the same was then and there signed or attested by the signature of the said secretary, 'H. Stansberry,' and the signature of the president of said board, as required by the eighth section of said chapter, an official copy whereof is now here filed as part hereof marked No. 1. Now, the orators have no means of accurately knowing, and do not personally know, whether the action and proceedings of said board touching the said elections as embodied in the foregoing order is right or wrong; but upon their information they believe it right

1880
Special Term.

Corrothers *et al.*
v.
Board of Education of Clinton District, Monongalia Co.

and valid, and, in fact, binding and conclusive upon said board; that it, the said board, thereby exhausted its power in the premises; at least, unless and until the said order and proceedings were revised, set aside and annulled by a competent superior tribunal.

"And the orators are furthermore advised and so charge that the said board, when so acting in the premises touching the said election, were essentially a judicial tribunal, and that its said acts, decision and proceeding therein was and is essentially a judicial act and proceeding, and as such liable to be revised and corrected, if wrong, by the circuit court of said county; and that until so revised and corrected or set aside (if found to be wrong), said acts and proceeding are not only binding but *conclusive* upon said board. Nevertheless, the orators are informed, and so in fact charge as true, that the said board afterwards, to wit, at a special meeting held by the said board at the said Price school-house, in the said district, on the 30th day of August, 1875, without any authority of law so to do, and in violation of the provisions of the act aforesaid. and after the said ballots, records and proceedings so forwarded by the said several sub-districts in said district of Clinton had been opened, and had remained opened from the said regular or stated meeting of the 23d day of August, 1875, on file with the secretary of said board, as *finished* or worthless papers, unlawfully and wrongfully, as the orators are advised and believe. after re-considering (not setting aside) the order made at their meeting bearing date the 23d of August, 1875, being the said order making the elections of the several sub-districts in said district of none effect, 'proceeded to open and examine the election records of the several sub-districts, and found the result of said election as follows: J. S. Watson, president elect of the board of education, he having received the largest number of votes for that office; and J. W. Phillips and Morgan B. Hale, commissioners of said board, they having received the highest number of votes for said office. It was also

1880
Special Term.

Corrothers et al.
v.
Board of Education of Clinton District, Monongalia Co.

ascertained that A. L. Wade had received two hundred and fifty-two votes for county superintendent, and G. W. Laishley, nine votes for same. The number of votes cast for levy, two hundred and thirty-seven; number against levy, twenty-six.' After which the said board issued certificates of election for the board of education to the persons properly entitled thereto. Which last named order it seems was recorded by the secretary of said board and signed in manner aforesaid, an official copy whereof is also here filed as part hereof marked 'number two.' Now the orators upon their information and belief, charge that the order last aforesaid, and proceedings therein set forth, are mere *nullities*, void and of no effect, because not warranted or authorized by law, and because the said board by its proceedings and order first herein stated of the 23d day of August, 1875, the day fixed by law for so doing, *exhausted its powers* in that behalf; and because said order of the 30th of August does not even purport to *set aside* or annul the said order of the 23d of August, and because the said order on its face, so far as it states that the said board at its special meeting opened said records, &c., is not in fact true, for that in truth and in fact the said records, as the orators are informed and believe, were then already opened, as to seven of said poll books at least, and had remained so ever since the said stated meeting of said board so had on the said 23d day of August, 1875, as aforesaid.

"Now, the orators further represent and show, that notwithstanding that the said order and proceeding of the said board so done on the said 30th day of August, 1875, were, as they believe, wrongful, illegal and void, and so understood by the voters of said district, and especially by the said J. S. Watson, J. W. Phillips and M. B. Hale pretending to be and act as the board of education of said district under and by virtue of the said illegal and void order of the 30th of August aforesaid; and notwithstanding that the said pretended elections of the 2d

Friday of August, 1875, had been as the orators believe
lawfully declared null and void at the time and by the
board to whom the power so to do rightfully belonged,
a fact well understood and acquiesced in by the voters of
said district, and by said so-called new board itself, as
hereinafter more fully shown, yet the said J. S. Watson,
J. W. Phillips and M. B. Hale, so wrongfully presuming
and pretending to be the board of education of said dis-
of Clinton, afterwards, to wit, at a special meeting of the
said so-called board of education of said district, wrong-
fully and unlawfully held by it, or them, at the Smith
school-house, in sub-district number four, on the 9th day
of October, 1875, the said so-called and pretended board
wrongfully and unlawfully, among other things, ordered
'that a tax of twenty (20) cents on the hundred dollars
be made on both real and personal property for school
fund, and that a tax of eight (8) cents on the hundred
dollars be made on both real and personal property for
building purposes.' Now, the orators are informed and
believe and so charge that the act or acts and order last
aforesaid is sheer usurpation on the part of the said so-
called board, and is otherwise unlawful, null and void,
and which last named order and proceedings it seems
were also recorded by one E. Trickett, claiming to be
secretary of said so-called board, a copy whereof is also
here filed as a part hereof marked number three.

"And the orators still further represent and show that
the said so-called board of education, aided by a num-
ber of persons who the orators believe are confederating
with the said so-called board, in order to tyrannize over
and wronfully oppress the orators and many others of
the larger tax-payers in said district in the premises,well
understanding and knowing that said pretended election
was illegal, null and void, and that it had been so de-
clared by the board having rightful jurisdiction over
that question, and also well knowing that their aforesaid
certificate of election to said office was a nullity and a
farce, and that their aforesaid pretended order of levy

1880
Special Term.

Corrothers *et al*
v.
Board of Education of Clinton District, Monongalia Co.

was mere usurpation and of none effect, nevertheless, they, with their confederates aforesaid, without the knowledge of the orators and many others of the larger tax-payers of said district, and after the making of their aforesaid order or levy, as the orators are now informed, applied to or petitioned the Legislature of West Virginia, at Wheeling, for a special act to legalize the said election for members of the board of education of Clinton district, and very soon afterwards, to wit, on the 23d day of December, 1875, hurriedly and quietly procured an act to be passed and approved, entitled 'An act to legalize the election on the second Friday of August, 1875, for members of the board of education of Clinton district, in the county of Monongalia,' and which is made to take effect from the date of its approval on its face.    A duly authenticated copy of which act is now here also filed as part hereof marked No. 4, from which it appears that it only purports to legalize the said election as to the members of the board of education. Nothing more.    It does not, as the orators are advised, pretend even to legalize the *levy* so laid by said pretended board, and if it had done so, the orators are advised that such attempt would have been a nullity, inasmuch as nothing but the *people or voters* of said district, by their affirmative, positive, legal vote can validate or legalize such a levy.   But the orators upon their information and belief, further charge that said act, even so far as it purports to legalize the *election* of the *members* of said board, is a mere nullity and unconstitutional in this, among other things—that is to say, the order and decision of the board of education made on the 23d day of August, 1875, was of a matter essentially *judicial* in its character, and being so, the legislative branch of the State government has no power to validate nor invalidate it.    (5th West Va., p. 57.)

"The orators, upon their like information and belief, further charge that even should said act be *constitutional*, and so enacted and passed as to take effect from the date

of its approval aforesaid, that still it cannot and ought not to be *retrospective* in its operation so as to validate the said *levy* so ordered and made before the passage of the said act, when the said so-called board was not legally elected, and not being legally elected, were not elected at all. The orators upon their like information and belief charge that the said act last refered to is a *local and special* act, essentially purporting to regulate and change county or district affairs, and is, therefore, inhibited by section thirty-nine of article six of the Constitution of the State. The orators upon their information and belief charge that the said James S. Watson, J. W. Phillips and M. B. Hale have not, nor hath either of them, *qualified* to said election or as such board since the passage of the said act of the Legislature; and that they are advised the said act does not legalize their qualification if made before the passage of said act. Nevertheless, the orators charge that the so-called illegal board, by its so-called illegal secretary, reported or caused to be reported the said unlawful and wrongful levy to the clerk of the county court and the county superintendent, and also, as the orator supposes, to the assessor of said district—that is to say, the assessor of the eastern district of said county, who, as the orators also believe, extended the said levy or tax on his books of the assessment for State and county purposes, in accordance with section forty-four of chapter one hundred and twenty-three of Acts of 1872-3, and thereupon said unlawful levy against your orators came and was placed into the hands of George W. McVicker, sheriff of said county, and his deputies, for collection, &c.

"And the orators further aver and charge that the said sheriff by his deputy, Samuel McVicker, proceeded to enforce and is now enforcing against your orators, respectively, the collection of the aforesaid unlawful and wrongful tax or levy so unlawfully and wrongfully made by the said so-called board of education of said district as hereinbefore stated; that the sum or amount of said

1880
Special Term.

Corrothers *et al.*
v.
Board of Education of Clinton District, Monongalia Co.

1880
Special Term.

Corrothers *et al.*
v.
Board of Education of Clinton District, Monongalia Co.

unlawful and wrongful tax or levy so made against and upon each of your orators is as follows, to-wit:

| | |
|---|---|
| John W. Corrothers | $89 18 |
| Thomas H. Watson | 67 86 |
| Wm. E. and Thomas F. Watson | 69 30 |
| Jesse Shuttleworth | 16 78 |
| John W Lanham | 7 67 |
| Elza L. Morgan | 13 40 |
| Zadoc McBee | 3 29 |
| Peter Price | 3 73 |
| Zadoc Thomas McBee | 5 54 |
| Thomas Price | 5 71 |
| Coleman Trickett | 2 92 |
| Andrew J. Kincaid | 7 72 |
| Joseph Trickett | 97 |
| Oliver Travis | 3 61 |

"That the said sheriff, by his deputy, has now actually levied upon the property of your orators, Corrothers, Thomas H. Watson, Wm. E. and Thomas F. Watson and John W. Lanham, respectively, to enforce and satisfy the aforesaid unlawful and wrongful levy and tax against them, respectively, and he has now advertised the said property so levied on to be sold on the 15th day of March, 1876, and is about to levy on the property of each and all of the others of the orators for the same unlawful and wrongful purpose, and will do so, as the orators fear and believe, unless restrained from so doing by the strong arm of a court of chancery, and which aid the orators now here claim. To this end the orators pray, inasmuch as they are without adequate relief at and by the rules of the common law, and relievable only in a court of equity, that the said pretended board of education for said district of Clinton, composed of the said James S. Watson, as its pretended president, and J. W. Phillips and Morgan B. Hale, commissioners, and George W. McVicker, sheriff of said county, &c., be made parties defendant to this bill, and by proper process be compelled to answer the same according to the rules of this court, and the premises considered, the orators pray that the said sheriff and his deputies be at once enjoined and stopped from further proceedings to sell the proper-

ty of the orators already so levied on by him as afore- said, and from making any other or further levies on or against the property of any and all of your orators by reason of or to satisfy in whole or in part the aforesaid unlawful and wrongful levy so ordered and made by the said unlawful and pretended board of education as aforesaid, until the further order of this court.

1880
Special Term.

Corrothers *et al.*
v.
Board of Education of Clinton District, Monongalia Co.

"And your orators further pray that when the whole matter shall be fully and finally heard that your Honor will perpetuate the said injunction for all time, and if right and proper, and within the power of your honorable court so to do, that your Honor will set aside and declare null and void the aforesaid unlawful and wrongful order of said pretended and unlawful board, and that your Honor will also grant unto your orators, collectively and severally, all such other and further relief in the premises, both general and special, as to equity belongs or appertains. And your orators will ever pray, &c."

The bill was sworn to.

The following is exhibit number one filed with the bill :

" A COPY OF THE PROCEEDINGS OF THE BOARD OF EDU-
CATION.

" At a stated meeting of the Board of Education of Clinton district, Monongalia county, West Virginia, held at the Price school-house, in the tenth sub-district of said district, August 23, 1875. Present, N. C. Vandervort, president, and Isaac Reed and S. T. Shuttlesworth, commissioners.

" At which time the said board, in accordance with section second, chapter one hundred and twenty-three, Acts of 1872-3, School Law of West Virginia, proceeded to open and examine the election records of the several sub-districts of said district. Said board, after examining a part of said election records and finding some mistakes existing on the part of the judge and clerk conduct-

68

1880
Special Term.

Corrothers *et al.*
v.
Board of Education of Clinton District, Monongalia Co.

ing the election in sub-district number seven of said district, and some slight mistakes in the elections held in other sub-districts, declared the elections held in the several sub-districts of said district null and void. Whereupon, a motion was made to set the same aside. After a spirited debate on said motion by said board, the motion prevailed.

"Members of said board favoring said motion, Isaac Reed and S. T. Shuttlesworth; member opposing the same, N. C. Vandervort.

"After allowing some orders, the board adjourned.

"N. C. VANDERVORT, *Pres't.*

"H. STANSBERRY, *Sec'y.*"

Exhibit No. 2 filed with the bill is as follows:

"A copy of the proceedings of a special meeting of the Board of Education of Clinton district, Monongalia county, W. Va., held at the Price school-house, in the tenth sub-district of said district:

AUGUST 30, 1875.

"Present, N. C. Vandervort, president, Isaac Reed and S. T. Shuttlesworth, commissioners.

"At which time the Board, after reconsidering the order made at their meeting bearing —— August 23d— said order making the elections of the several sub-districts in said district of none effect—proceeded to open and examine the election records of the several sub-districts, and found the result of said election as follows: J. S. Watson, president-elect of the board of education, he having received the largest number of votes for that office, and J. W. Phillips and Morgan B. Hale commissioners of said board, they having received the highest number of votes for said office; it was also ascertained that A. L. Wade had received two hundred and fifty-two votes for county superintendent, and G. W. Laishley nine votes for same. The number of votes cast for levy, two hundred and thirty-seven; number against levy, twenty-six. After which the said board issued certificates

1880
Special Term.

Corrothers *et al.*
v.
Board of Education
of Clinton
District, Monon-
galia Co.

of election for the board of education to the persons properly entitled thereto.

"There being no further business, the meeting adjourned.

"N. C. VANDERVORT, *Pres.*

"H. STANSBERRY, *Sec'y.*

The following is exhibit No. 3 filed with the bill:

"The following is a copy of a special meeting of the Board of Education of Clinton district, Monongalia county, W. Va., held at the Smith school-house, in sub-district No. four, October 9, 1875:

"Present, J. S. Watson, president, J. W. Phillips and M. B. Hale, commissioners.

"At which time it was ordered—

"1st. That the secretary shall receive $25 a year for his services.

"2d. That a tax of twenty (20) cents on the hundred dollars be made on both real and personal property for school fund.

"3d. That a tax of eight (8) cents on the hundred dollars be made on both real and *person* property for building purposes.

"There being no further business, the meeting adjourned to meet at the Carral school-house the first day of November, 1875.

"J. S. WATSON, *Pres.*

"E. TRICKETT, *Sec'y.*"

The injunction was granted as prayed for in the bill by the judge of the circuit court of Monongalia county on the 3d day of March, 1876.

At rules held in the clerk's office of the said circuit court, on the first Monday of April, 1876, the defendant demurred to the plaintiffs' bill, in which demurrer the plaintiffs joined. The demurrer is general and not necessary to copy. The defendant at the same time filed its answer to the bill, to which the plaintiffs filed a general replication. Upon motion made in chambers on the 18th day of August, 1876, after due notice, the said judge of

1880
Special Term.

Corrothers *et al.*
v.
Board of Education of Clinton District, Monongalia Co.

the circuit court of Monongalia county, upon the hearing of said motion dissolved the injunction, on the ground that the defendants claiming to be the Board of Education of Clinton district, "on the 9th day of October, 1875, and at the time of their ordering the said levy for school purposes on the property of the plaintiffs and other tax-payers of said Clinton district, constituted a *de facto,* if not a *de jure,* board of education for said district, and as such, and perhaps for other reasons, their action in order-ing said levy cannot be reviewed and impeached in a court of equity on account of any matters alleged in the plaintiffs' bill. In term, on the 21st day of September, 1876, the bill was by the circuit court of Monongalia county dismissed with costs.

From and to said order dissolving the injunction and said decree dismissing the bill an appeal and *supersedeas* were allowed by this Court.

*P. H. Keck,* for appellants.

*Berkshire* and *Sturgiss,* for appellee, cited the following authorities:

Acts 1875, pp. 154, 153; 9 W. Va. 140, 3 Gratt. 206; High *Quo Warranto* 452, 453, *et seq.;* Acts 1872-3, ch. 123, § 2; Cons. Art. VI, § 39.

JOHNSON, JUDGE, delivered the opinion of the Court:

Does the bill present a proper case for the interposi-tion of a court of equity?

*Bull et al.* v. *Read et al.,* 13 Gratt. 78, was an injunc-tion to a levy for taxes for school-purposes, on the ground that it was illegally levied under the act providing for free schools in the first magisterial district of Accomack county, and on the further ground that the said act was unconstitutional. It was claimed by the defendants that a court of equity had no jurisdiction in the case. Judge Lee, who delivered the opinion of the court in that case, said at page eighty-seven: "It may be that for each act

of the board of commissioners affecting the inhabitants
of the district every one who is aggrieved might have a
remedy at law of some sort, more or less effectual, but
the remedy in equity would be far more perfect, ade-
quate and complete; and as the acts of the commissioners
would be in their nature continuing, and to be renewed
from time to time, to restrict the parties to their legal
remedies would be to consign them to interminable lit-
igation, and involve endless multiplicity of suits. Hence
the court of chancery will interpose by injunction to
prevent the threatened wrong, and provide a remedy
which shall at once reach the whole mischief and secure
the rights of all, both for the present and the future;
and its jurisdiction in such cases would seem to be well
defined, and fully sustained by authority." He cites a
large number of authorities to sustain the position.

A suit in equity will not lie to restrain the collection
of a tax on the sole ground that the tax is illegal. There
must exist in addition special circumstances, bringing the
case under some recognized head of equity jurisdiction,
such as, that the enforcement of the tax would lead to a
multiplicity of suits. *Dows* v. *City of Chicago*, 11 Wall.
108, where the case is thus brought under some recog-
nized head of equity jurisdiction, as where the plaintiffs
bring the suit in behalf of themselves and all other tax-
payers in the district, who are to suffer by the tax im-
posed, if the bill shows that the tax is illegal, to avoid a
multiplicity of suits, equity will take jurisdiction by in-
junction. *Bull et al.* v. *Read et al., supra.* Jurisdiction in
such cases was sustained by this Court in *Kuhn* v. *The
Board of Education of Wellsburg et al.*, 4 W. Va. 499;
*McClung* v. *Livesay,* 7 W. Va. 329; *Williams's adm'r et
al.* v. *Argabrite, Frame, &c.,* and *Luddington* v. *McMil-
lan,* opinion by Moore, Judge. The two last cases were
decided in February, 1874, but for some reason were not
reported. In the last three cases, it was held that the
injunctions were properly dissolved, because the plain-
tiffs did not bring their suits in behalf of themselves and
all other tax-payers who would be injured by the tax.

1880
Special Term.

Corrothers *et al*
v.
Board of Educa-
tion of Clinton
District, Monon-
galia Co.

syllabus 3.

The suit in the case at bar is properly brought; and if the tax were illegal, for the reasons above stated the jurisdiction will be sustained, unless such jurisdiction is ousted, as claimed by counsel for appellees, by chapter seventy two of the Acts of the Legislature of 1875, which provides: " That upon the petition of ten taxpayers residing in any city, town or village, aggrieved by an unlawful or erroneous levy or imposition of taxes, the circuit court of such county may supersede the levy made by such city, town or village in the same manner, and to the same effect, as the circuit court may now supersede a levy made by the county court. In like manner if an independent school district or any other school disdrict impose a tax or levy contrary to law, or in excess of the rate of taxation prescribed in the act creating an independent district for schoolpurposes, upon a like petition the circuit court may supersede the levy. Upon like petition any ordinance of a city, town or village made contrary to law, the circuit court may supersede, revoke and annul the same."

There is nothing in this act taking away from courts of equity in express terms the jurisdiction to enjoin the collection of taxes illegally imposed. Where equity has jurisdiction of a subject, and the Legislature by statute gives a remedy at law for the injury complained of, and does not by the terms of said statute take away the equitable jurisdiction, it must be considered as an additional remedy, and the equitable jurisdiction is not thereby ousted. 1 Sto. Eq. § 80; *Atkinson* v. *Leonard*, 3 Bro. C. C. 218; 9 Ves. 464; 7 Ves. 19. If in such a case it was the intent of the Legislature to take away the jurisdiction of a court of equity, that intent must be made to appear in the statute itself, as it will not be presumed in the absence of such intent appearing, that it existed. It will not be presumed that the Legislature intended to take away any of the rights of the citizen already existing, merely because it has given him another right, unless the legislative intent to substitute one right for the other clearly appears.

But was the tax illegally assessed? It is claimed by counsel for appellant, that the gentlemen claiming to constitute the Board of Education of Clinton district were declared by the old board not legally .elected. and therefore they had no legal right to levy the said tax; that this action of the old board was final, as far as it was concerned, and that therefore the reconsideration at the next meeting of the board, held a week later, of the order entered on the 23d, setting aside the election; and at that meeting held on the 30th of August, 1875, the action of the board reconsidering its former action, and declaring the result of the election for members of the board of education and declaring certain persons elected, and declaring the result of the election in favor of a levy for school purposes was a nullity.

1880
Speci l Term.

Corrothers et al.
v.
Board of Educa-
tion of Clinton
District, Monon-
galia Co.

Section two of chapter one hundred and twenty-three of the acts of the Legislature of 1872-3, among other things provides, that " The board of education for each district shall assemble on the second Monday after said election, and, a majority of the same being present, shall open and examine the election-records of the several sub-districts. They shall ascertain therefrom who has received the largest number of votes for the several officers of the 'district board of education, and give certificates of their election to the persons entitled thereto. They shall also ascertain the sum of the votes cast in the several sub-districts, of their district for the person or persons voted for as county superintendent, and within five days report the same to the clerk of the county court. * * * * If a majority of the ballots given in the district have written or printed upon them "for power to levy ' it shall be construed as conferring upon the board of education the authority of the people to make the annual levies required in the thirty-eighth and fortieth sections of this chapter, for each year during their term of office."

It was the manifest duty of the board, when it met on the second Monday after the election, to wit, on the 23d

of August, 1875, to examine the election records of the several sub-districts, and declare the result, and give certificates to those having the greatest number of votes for members of the board of education. The duty the act required of them was ministerial; and if they refused to perform it, they could have been compelled by *mandamus* to do what by law they were required to do. What they did, they clearly had no right to do; and when a week later they met and reconsidered their former action, and then proceeded to do what the act of the Legislature required at their hands, they only did what they might have been compelled by *mandamus* to do. *The Board of Supervisors of Mason County* v. *Minturn*, 4 W. Va. 300. If a board of education refuses to do an act required by statute to be done at a particular time, and the act is such that the board could be compelled by *mandamus* to perform it, the board may afterwards, on its own motion, do the act. The board having legally done the act, everything, so far as the bill declares, was regular, and the plaintiffs have no right of complaint. The bill shows no equity whatever.

It is not decided in this case, how far a court of equity would enquire into the legality of an election upon a bill to enjoin the collection of taxes, on the ground that the members of the board which levied the tax were not legally elected. It might be that such board assumed to act without the pretence of an election, or that they claimed to be elected by a town-meeting, or in some other mode not authorized by law. These questions do not arise in this cause. The election, so far as the bill shows, was held according to law; and we have seen that the board did what the law required them to do. It was therefore not necessary for an act to be passed legalizing the election; and we do not decide whether the said act is constitutional or otherwise, as the question does not properly arise.

The order of the judge of the circuit court of Monongalia county dissolving the injunction, and the decree of

the circuit court of said county dismissing the plaintiffs' bill with costs are affirmed, with costs and $30 damages.

THE OTHER JUDGES CONCURRED.

ORDERS AFFIRMED.