# CHARLESTON.

CLARKSBURG NORTHERN RAILROAD. CO. V. MORRIS, SHERIFF.

Submitted September 14, 1915.   Decided October 19, 1915.

1. TAXATION—*Assessment of Railroad Property—Recorded Transfer of Land.*

   A county assessor has no authority to assess any part of a public railroad company's right of way, not so far completed as to be fit for use, unless and until the land acquired therefor has been transferred to it from the former owner on the land books; and such assessment by him is unlawful and void.  (p. 778).

2. SAME—*Unlawful Assessment—Collection—Injunction.*

   At the suit of the owner, equity will enjoin the collection of a tax extended upon such unlawful assessment.  (p. 778).

Appeal from Circuit Court, Tyler County.

Suit by the Clarksburg Northern Railroad Company against L. H. Morris, Sheriff, etc.   From decree for plaintiff, defendant appeals.

*Affirmed.*

*Fred O. Blue, John T. Simms,* and *Boreman & Carter, O. B. Conaway,* and *George L. Rose,* for appellant.

*Underwood & Moore,* for appellee.

WILLIAMS, JUDGE:

Plaintiff was chartered under the laws of West Virginia, in 1911, for the purpose of building and operating a railroad, from the city of New Martinsville, through Wetzel and Tyler counties, to Middlebourne in the last named county, and thence, by the most practical route, to the city of Clarksburg. In the year 1913 the assessor of Tyler county entered upon the land books its right of way and the improvements thereon, situate in two of the magisterial districts of said county, and valued the same, for taxation, at $80,000 in one district, and $1,000 in the other, and extended the taxes thereon.   The railroad had been graded on the right of way in question, but had not been so far completed as to be fit for use, and was not assessed by the board of public works for the year 1913.   The taxes against plaintiff in the two districts amounted to

$982.13. It refused to pay them, and the sheriff of Tyler county levied upon, and was proceeding to sell, its locomotive engine and car; whereupon it brought this suit to enjoin him. The sheriff appeared, demurred to the bill and resisted the application for injunction, and the court overruled the demurrer and awarded a temporary injunction. He later tendered his answer and certain affidavits, and moved for a dissolution of the injunction; plaintiff likewise tendered affidavits, and resisted the motion. Considering the motion upon the bill and answer and affidavits, all of which were permitted to be filed, the court overruled it, but did not make final disposition of the case. From that decree, made at a special term on the 10th of August, 1914, defendant has appealed.

Counsel for appellant insist that plaintiff can not now be heard to complain, even if the assessment was improper, because it did not appear before the board of equalization and review of Tyler county, and ask to have the erroneous assessment, if such it be, corrected. This, they claim, is the remedy provided by statute, full, adequate and complete; and, failing to avail itself of it, plaintiff's present complaint can not be entertained. In support of this proposition counsel cite, in brief, sections 129, 130 and 131 of chapter 29, Code 1913, and the decisions of this court in *Island Creek Fuel Co.* v. *Harshbarger*, 73 W. Va. 397, 80 S. E. 504; and *W. Va. Nat'l. Bank* v. *Spencer*, 71 W. Va. 678. We do not think the statutes and decisions cited apply to a case like the one before us. They relate to the remedy for correcting errors and omissions in the assessment and valuation of property which the local assessor is authorized to assess, and not to assessments made by him without authority of law.

It is admitted that only the board of public works is authorized by law to assess the property of public service corporations, used by them in the service of the public. But it is claimed that it is the duty of the local assessor to assess a railroad company's right of way, owned by it at the beginning of an assessment year, and on which its road has not been so far completed as to be fit for use. Such authority is claimed to be derived from the proper interpretation of various sections of chapter 29, Code 1913, relating to assessments

of property, considered in connection with Sec. 1, Art. IX of the Constitution, requiring all property to be taxed, except property used for certain purposes therein named, which the legislature may exempt from taxation by law. The property of a railroad company is not of the class which can become exempt from taxation.

It must be admitted that all taxable property must be assessed either by the local assessor or by the board of public works, because there is no other officer or body authorized to assess property for general taxation. Property not assessable by the board of public works must, necessarily, then be assessed by the local assessor.

Sec. 93, Ch. 29, Code 1913, relating to the valuation of the property of public service corporations, by the board of public works, contains the following provision: ''Nothing in this chapter contained shall be construed to require the assessment of any part of the railroad, telegraph, telephone or pipe line until such part is so far completed as to be fit for use.'' To interpret this as meaning that such property should not be taxed at all, and therefore not to be assessed by the board or by the local assessor, until so far completed as to be fit for use, would make it repugnant to the Constitution which requires all property to be taxed, except property which the legislature is expressly authorized to exempt from taxation. *C. & O. R. R. Co.* v. *Miller, Auditor,* 19 W. Va. 408. The provision must, therefore, be interpreted simply as a limitation upon the power of the board of public works to assess such property. It then, necessarily, becomes the duty of the local assessor to assess it. But he must do so in the manner provided by law. That property, acquired by a railroad company for its right of way, may be assessed by the local assessor is further indicated by Sec. 58, Ch. 29, which provides the method by which a land owner may avoid the payment of taxes on so much of his land as has been acquired, either by purchase or condemnation, for a railroad. He may have the number of acres so taken deducted from his land, and the statute says, ''the amount so deducted shall be transferred and charged to the railroad company until such time as the railroad is constructed and assessed by the board of public works under the provisions of this chapter, and when

the said railroad is so assessed by the board of public works, the land occupied by its right-of-way and assessed to it under the provisions of this section shall be stricken from the land books, and be no longer assessed under this section.''

The assessment here does not show how many acres the right of way contains; it is assessed as ''Clarksburg Northern R. R. Co. Right of Way & Improvements thereon, $80,000.'' It does not appear that any part of the right of way, so assessed, had been deducted from the lands of the previous owners. Most of the deeds and contracts for the right of way, bear date sometime after the 1st of April, 1913, the beginning of the assessment year. Many of them bear date in the year 1914; none of them were admitted to record prior to August 19, 1913, and many of them were not recorded until January, 1914, and a few of them as late as June, 1914. Presumably, therefore, all of the lands had been assessed, for the year 1913, to the original owners. They were not transferred on the land books, and there is no evidence that they were not so assessed, and the taxes paid thereon by the previous owners. Hence, they were not assessable to the railroad company for that year. Neither the assessor nor the board of equalization and review, had authority to charge the lands to the railroad company, simply by the designation of a railroad right of way, or in any other way, until the land had been transferred from the former owner to the railroad company, on the land books of the county. Sec. 58, above quoted from, provides the only manner in which such reduction can be made. That provision of the section reads as follows: ''The reduction, provided for in this section, shall be made only by the county court of the county wherein such land is assessed at the time the reduction is applied for, after ten days' notice in writing to the prosecuting attorney of such county and upon satisfactory proof of the number of acres in any such public road or railroad, and of the number of acres in the whole tract or tracts of land from which the deduction is desired to be made. If the reduction is made on account of land taken for a public road, such reduction shall continue only so long as the land is used as a public highway, after which time the officer, whose duty it is to make out the land book, shall increase the quantity of land in the tract by adding to it the number

of acres included in that part of the public road running through said land, with the proper value thereof, which has ceased to be used as such public road. Any order made by the county court upon such application shall direct such officer to correct the land books according to the facts established by such order.'' No application appears to have been made by the former owners to have their respective lands reduced on account of land acquired by the railroad company for right of way, hence it follows that the assessment of the railroad company was without warrant in law and was, therefore, void; and, if allowed to stand, it would be double taxation.

It is insisted that appellee's only remedy was by appearance before and complaint to the board of equalization and review, and that, having failed to apply to it in the time allowed, it can not maintain this suit; and certain cases, recently decided by this court, are cited to sustain that proposition. But this case differs materially from those cited. They involved assessments which the assessor had the right to make, and which it might reasonably be expected he would make; whereas, in the present case, he had no authority to make the assessment until the land was transferred to the railroad company, on the land books, and the quantity ascertained and deducted, from the lands of the previous owner; and there was no reason to suspect that such unauthorized assessment would be made. In the *Harshbarger Case, supra,* the assessment was of coal barges used on the Ohio River, by the Island Creek Fuel Company, for the transportation of its coal. Its principal place of business was in Logan. county, making the barges assessable, under the statute, in that county instead of Cabell county, where the barges were. They had been erroneously assessed in the latter county, together with other property owned by the company in that county, and properly assessable therein. The court held that, not having appeared before the board of equalization and review of Cabell county, to have the error corrected, the owner could not thereafter be heard to complain, unless on account of fraud or some adventitious circumstance preventing its appearance, which was not averred. The Spencer suit, *supra,* was brought to enjoin the collection of taxes assessed on bank

stock, on the ground that the stockholders had not been allowed to deduct their debts from the assessed value of the stock, resulting in an alleged erroneous increase of their taxes. Complainants had, however, previously sought relief in the manner then provided by statute, and failed. The court held that they had exhausted their remedy, and were bound by the former adjudication.

But the case under review involves more than a simple error, mistake or omission in the assessment of property, which the board of equalization and review could correct; it is an assessment made without authority. The local assessor having no authority in law to assess the right of way, until the land was transferred to the railroad company, it was under no duty to appear before the board of equalization and review of Tyler county to have its property released from the unlawful assessment; and that board itself had no more authority to assess it than the assessor had.

Ordinarily, equity will not interfere by injunction with the taxing power of a state, but where, as in this case, the assessment is wholly void, and the public revenue is affected by the proceeding only to the extent of the illegal tax, equity does not hesitate to enjoin its collection. Here the revenues of Tyler county, and the two magisterial districts therein through which the railroad runs, are affected only to the extent of the taxes unlawfully assessed against plaintiff's property, and we perceive no reason why their collection should not be enjoined. Remedy by injunction, in such case, is sustained by the following authorities: *Christie* v. *Malden,* 23 W. Va. 667; *Crim* v. *Philippi,* 38 W. Va. 122; 1 High on Injunction, Secs. 485, 490 and 502; and 2 Cooley on Taxation, (3rd ed.), 1423.

The decree is affirmed, and the cause remanded.

*Affirmed.*