342 S.E.2d 89

**STATE of West Virginia ex rel. Ernest F. AYERS, Joe Adams and E.M. Cool, as Members of the County Commission of Webster County, Martha Dean, as Superintendent of the Webster County Schools; Harold B. Carpenter, Charles B. Cool, Sue Talbott, William R. Armentrout and Ken Johnson, as Members of the Board of Education of Webster County; and Caroline S. Clayton, as Sheriff of Webster County, West Virginia**

v.

**The Honorable Danny O. CLINE, as Judge of the Fourteenth Judicial Circuit, and East Kentucky Energy Company.**

No. 16911.

Supreme Court of Appeals
of West Virginia.

Dec. 18, 1985.

Dissenting Opinion April 4, 1986.

Jack Alsop, Pros. Atty., Webster Springs, for appellants.

Callaghan & Ruckman, Richwood, for East Kentucky Energy.

McHUGH, Justice:

In this prohibition proceeding the petitioners, who are members of the County Commission of Webster County, West Virginia, members of the Board of Education of Webster County, the Superintendent of Schools for that County, and the Sheriff of that County, seek a writ from this Court prohibiting the Circuit Court of Webster County, one of the respondents [hereinafter "the circuit court"], from enforcing its injunction against the sale, for nonpayment of real property taxes, of real property in that County owned by East Kentucky Energy Company, the other respondent in this proceeding [hereinafter "the taxpayer"].

I

The taxpayer is the owner of the fee and mineral estates in Webster County tracts, totalling 7,374 acres, more or less. The taxpayer purchased the same, by deed dated July 15, 1982, from Allegheny Pittsburgh Coal Company for $29,842,500.00.

For the year 1983, the property was assessed in the name of Allegheny Pittsburgh Coal Company at about $12,500,000.00, or 50% of the purchase price paid by Allegheny Pittsburgh Coal Company in 1975. For the year 1984, the property was assessed in the name of the taxpayer at $14,921,250.00, or 50% of the purchase price paid by the taxpayer in 1982. The 1985 assessment was the same as the 1984 assessment.

Allegheny Pittsburgh Coal Company timely contested the 1983 assessment[1] and the taxpayer timely contested the 1984 and 1985 assessments before the County Commission of Webster County sitting as the Board of Equalization and Review. The taxpayer introduced evidence before such Board on the mineability of the coal in question. The evidence showed that the taxpayer was assessed at about $3,000.00 per acre, based upon appraised values determined from the recent purchase price paid by the taxpayer. The evidence also showed that other taxpayers in the county having allegedly comparable property were being assessed at about $60.00 per acre. Finally, the evidence showed that the State Tax Department in the year 1975 had appraised the coal properties in Webster County at $360.00 per acre. After reviewing this evidence the Board of Equalization and Review affirmed the assessments.

Thereafter, the taxpayer and its predecessor in title, Allegheny Pittsburgh Coal Company, timely appealed to the circuit court. The taxes for the years 1983 and 1984 were not paid pending a ruling on the appeals. By an order entered on November 1, 1984, the circuit court enjoined the sheriff from selling, on November 4, 1984, the taxpayer's properties in Webster County for nonpayment of taxes for the year 1983, due to the imminency of the circuit court's ruling on the taxpayer's appeal.

At a hearing held on April 19, 1985, the circuit court informed counsel for the parties that it intended to reduce Allegheny Pittsburgh Coal Company's assessment for the year 1983 and the taxpayer's assessments for the years 1984 and 1985 to the values determined in 1975 by the State Tax Department. A final order was not, how-

---

1. It appears from the record that Allegheny Pittsburgh Coal Company timely contested the assessments for each year it owned the property (tax years 1976 through 1983). It also appears, however, that the taxes were paid for each year

except 1983. The circuit court consolidated the separate appeals for each year in its belated final order entered in November, 1985, virtually ten years after the first tax year in question.

ever, entered until more than seven months later.

In May, 1985, counsel for the taxpayers tendered to the Prosecuting Attorney for Webster County a check for $44,442.88, payable to the Sheriff of Webster County, in payment of the 1983 and 1984 real property taxes. This check was not to be delivered to the sheriff immediately but was to be held "in escrow" pending entry of the circuit court's order. The amount of the taxes to be paid by the check was apparently computed using the State Tax Department's 1975 appraisal.

As she had done a year earlier for the 1983 taxes (prior to the November 1, 1984 injunction), the sheriff again advertised the taxpayer's properties for sale at public auction, this time to be held on November 18, 1985, for nonpayment of 1983 and 1984 taxes amounting to approximately $488,000.00.

Upon the taxpayer's motion, and after a hearing held on October 24, 1985, the circuit court, over the petitioners' objections, again enjoined the sheriff's sale of the properties, for nonpayment of 1983 and 1984 taxes, on the condition that the taxpayer post a bond in the amount of $500,000.00. The taxpayer subsequently posted such a bond. On November 1, 1985, the petitioners filed their petition for a writ of prohibition.

On November 22, 1985, which was after we had issued a rule to show cause herein, the circuit court entered a final order on the merits of the taxpayer's appeal, fixing the appraised values of the properties in question (with a couple of minor exceptions) at $360.00 per acre, the value determined by the State Tax Department in 1975 for coal tracts in Webster County. The circuit court ordered the county assessor to issue new tax tickets to the taxpayer, using the appraised values set by the circuit court, and applying the 60% assessment ratio and the proper levy rate.[2]

On November 29, 1985, the circuit court filed an answer and the taxpayer filed a motion to dismiss, alleging that this case was mooted by the circuit court's entry of its final order, on November 22, 1985, on the merits of the taxpayer's appeal.

## II

■ At the outset we disagree with the respondents' assertion that this matter has been mooted by the entry of a final order on the merits of the taxpayer's appeal reducing the assessments and directing the issuance of new tax tickets "forthwith." In syllabus point 1 of *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984), this Court held:

> A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.

*See also Marshall v. Casey*, 174 W.Va. 204, 205–206 n. 4, 324 S.E.2d 346, 347–48 n. 4 (1984) (collecting cases). The possibility that a circuit court in the future may, in the absence of our ruling herein, enjoin a sheriff's sale of property for nonpayment of taxes in a valuation case, coupled with the important public interest in tax revenues, lead to the conclusion that this case is an appropriate vehicle to provide a definitive resolution of the question presented in this case, in order to furnish guidance on an issue capable of repetition.

## III

The issue presented in this case is whether a circuit court may enjoin the sale of real property by a sheriff for the nonpayment of *ad valorem* taxes pending the court's ruling on an appeal by the owner of the property claiming that its property has been overvalued. We hold that the court may not enjoin such sale.

Within 30 days after the county commission (sitting as a board of equalization and review) adjourns (on February 28), that is, by March 30, a taxpayer who appeared

---

**2.** The merits of the final order of the circuit court in the taxpayer's appeal, entered on November 22, 1985, is not before us in this prohibition proceeding.

before the board and contested the valuation of his property may appeal to the circuit court for review of the valuation. *W. Va. Code,* 11-3-25 [1967]. This statute provides for the circuit court to determine the true and actual value and states: "If it be ascertained that any property has been valued too high, and that the owner has paid the excess tax, it shall be refunded to him, and if not paid he shall be relieved from the payment thereof."

Similarly, *W. Va. Code,* 11-3-26 [1931] provides as follows in the case of an erroneous assessment:

> Whenever the circuit court, on appeal, shall grant relief to any such applicant against the taxes, or any part of them, assessed against him either on the land or the personal property books, an order shall be made by such court *exonerating such applicant from the payment of so much of such taxes as are erroneously charged against him, if the same have not been paid;* and if paid, that the sum so erroneously charged by refunded to him. *Such order, delivered to the* assessor, *sheriff* or other collecting officer *shall restrain him from collecting so much as is erroneously charged,* and, if the same has been already collected, shall compel him to refund the money, if such officer has not already paid it into the treasury, and in either case, when indorsed by the person exonerated, it shall be a sufficient voucher to entitle the officer to a credit for so much in his settlement, which he is required to make. If what was erroneously charged has been paid into the state treasury, the order of the circuit court, attested by its clerk, shall entitle the claimant to a warrant on the state treasury for the amount thereof, if application for the same be made to the auditor within one year after the date of such order. (emphasis added)

The taxpayer contends that the language in *W. Va. Code,* 11-3-25 [1967], quoted above and the underscored language in *W. Va. Code,* 11-3-26 [1931] authorize it to withhold payment of property taxes pending a ruling by the circuit court on the taxpayer's appeal challenging valuation of the property. The taxpayer also contends that this language authorizes the circuit court to enjoin the sheriff's sale of the property for nonpayment of taxes pending the court's ruling on valuation. We disagree with both contentions.

A.

[redacted] *W. Va. Code,* 11-3-25 [1967] and *W. Va. Code,* 11-3-26 [1931], read *in pari materia* with *W. Va. Code,* 11-3-24 [1979] and with chapter 11A of the *Code,* particularly *W. Va. Code,* 11A-1-3 [1961] and 11A-3-4 [1965], authorize a taxpayer which is appealing the assessed value of its real property to withhold payment of the property taxes only for the period of about 20 months between the date that the taxes are "finally fixed" by the county commission (sitting as a board of equalization and review) and the date of the sheriff's sale of the property for nonpayment of taxes.[3] If the circuit court, *during this period of time,* ascertains that the property has been valued too high, the taxpayer would be relieved from the payment of the excess tax by the court's order exonerating the

3. Real and personal property tax assessments for a given year are "finally fixed" by February 28 of the year by the county commission sitting as a board of equalization and review. *W. Va. Code,* 11-3-24 [1979]. The first half of real and personal property taxes for a given year become delinquent seven months later on October 1 of that year and the second half of such taxes become delinquent on April 1 of the ensuing year, thirteen months after "fixed" by the board. *W. Va. Code,* 11A-1-3 [1961]. On any Monday after October 14 and before November 23 of the year after the tax year in question, which is about twenty months after the taxes have been "fixed" by the board, the sheriff is to sell real property for nonpayment of real property taxes. *W. Va. Code,* 11A-3-4 [1965]. If no one bids the required amount, the sheriff will purchase the real estate for the State. *W. Va. Code,* 11A-3-6 [1941]. The former owner of real estate purchased by the State has the right to redeem from the auditor within 18 months after the sale to the State. *W. Va. Code,* 11A-3-8 [1947]. Similarly, the former owner of real estate purchased by an individual at the sheriff's sale has about 18 months after the sheriff's sale to exercise his right to redeem ("any time before April first of the second year following the sale"). *W. Va. Code,* 11A-3-17 [1973].

taxpayer from payment of the erroneously charged portion of the assessment.

■ This conclusion is buttressed by the declared legislative purpose for chapter 11A of the *Code* relating to collection and enforcement of property taxes:

> *In view of the paramount necessity of providing regular tax income for the State, county and municipal governments, particularly for school purposes; and in view of the fact that tax delinquency, aside from being a burden on the taxpayers of the State, seriously impairs the rendering of these essential services; and in view of the further fact that delinquent land,* with its attendant problems made acute by the events of the past decade, not only constitutes a public liability, but also *represents a failure on the part of delinquent private owners to bear a fair share of the costs of government;* now, therefore, *the legislature declares that its purpose in the enactment of this and the following article is threefold: First, to provide for the speedy and expeditious enforcement of the tax claims of the State and its subdivisions;* second, to provide for the transfer of delinquent lands to those more responsible to, or better able to bear, the duties of citizenship than were the former owners; and third, in furtherance of the policy favoring the security of land titles, to establish an efficient procedure that will quickly and finally dispose of all claims of the delinquent former owner and secure to the new owner the full benefit of his purchase. (emphasis added)

*W. Va. Code,* 11A–3–1 [1941]. Accordingly, the statutory scheme for relief from an excessive property tax assessment is for an owner of real property contesting the assessed value thereof to pay the tax assessment under protest, to appeal to circuit court and if the assessment is reduced, to obtain a refund of the overpayment. Payment may be withheld during an appeal in such a case only until the date of the sheriff's sale, or, at the very latest, until the end of the redemption period after such sale has occurred. Otherwise, the public's

"paramount" need for "regular [that is, current] tax income ... particularly for school purposes[,]" *id.,* would not be provided. "[T]he absence of a requirement that [property] tax objections be accompanied by payments under protest during the depression years resulted in great numbers of people refusing to pay their taxes and filing objections, thus severely impairing the functioning of governmental units." *First National Bank & Trust Co. v. Rosewell,* 93 Ill.2d 388, 394, 67 Ill.Dec. 87, 90, 444 N.E.2d 126, 129 (1982). "Such circumstances serve only to promote instability in local government finances, since property taxes are a principle source of revenue for local governments." *Id.*

Further support for the conclusion that property taxes must normally be paid under protest pending an appeal claiming overvaluation of the property is provided by the fact that the West Virginia Tax Procedure and Administration Act, *W. Va. Code,* 11–10–1, *et seq.,* expressly states that such Act does not apply to *ad valorem* taxes on real and personal property. *W. Va. Code,* 11–10–3(a) [1985]. Under such Act, for most other types of taxes, a taxpayer may totally withhold payment pending a final decision in the case, and an assessment in a case thereunder does not become final until a final administrative *or court* decision. *See W. Va. Code,* 11–10–8, –9 and –10 [1978]. Under such Act, an appeal bond (or a showing of sufficient assets) is filed pending judicial review. *See W. Va. Code,* 11–10–10(d) [1978]. That *ad valorem* taxes on real and personal property are excluded from such Act is due to the fact that there is a specific system of collection and enforcement of these taxes provided by chapter 11A of the *Code.* As already noted, chapter 11A of the *Code* normally requires payment pending judicial review of the assessed value of property.

### B.

■ The statutory method of paying a property tax assessment under protest pending judicial review of the assessed value of real property is an adequate remedy at law precluding an injunction of a sher-

iff's sale of real property for nonpayment of taxes. "Injunctive relief, like other equitable or extraordinary relief, is inappropriate when there is an adequate remedy at law." *Hechler v. Casey*, 175 W.Va. 434, 440, 333 S.E.2d 799, 805 (1985), and cases cited therein. The adequacy of the review system provided by *W.Va.Code*, 11–3–24 [1979], *et seq.*, is confirmed by the numerous opinions of this Court holding that equity will ordinarily not interfere with the collection of property taxes. "A suit in equity will not lie to restrain the collection of a tax on the sole ground that it is improper." Syl. pt. 1, *Chris[t]ie v. [Town of] Malden*, 23 W.Va. 667 (1884). *See also In re Masonic Temple Society*, 90 W.Va. 441, 444–45, 111 S.E. 637, 638 (1922); *Pardee & Curtin Lumber Co. v. Rose*, 87 W.Va. 484, 489, 490, 105 S.E. 792, 794 (1921); *Clarksburg Northern R.R. v. Morris*, 76 W.Va. 777, 782, 86 S.E. 893, 895 (1915); *West Virginia National Bank v. Dunkle*, 65 W.Va. 210, 215, 64 S.E. 531, 533 (1909); syl. pt. 1, *Blue Jacket Consolidated Copper Co. v. Scherr*, 50 W.Va. 533, 40 S.E. 514 (1901); syl. pt. 1, *Williams v. County Court*, 26 W.Va. 488 (1885); syl. pt. 1, *Corrothers v. Board of Education*, 16 W.Va. 527 (1880); syl. pt. 6, *Douglass v. Town of Harrisville*, 9 W.Va. 162 (1876). Moreover,

[i]t is well settled that equity will not afford [injunctive] relief to a taxpayer unless he has exhausted the administrative remedies provided by law for the correction of excessive ... assessments.... [A]n adequate administrative remedy was afforded ... by provision for appeal from the decision of the Board of Public Works to the [circuit] courts of West Virginia, which are given by the statute [the] power to correct valuations made by the Board.

*Baltimore & O.R.R. v. Board of Public Works*, 17 F.Supp. 170, 173 (N.D.W.Va. 1936).

In the *Pardee & Curtin Lumber* opinion, *supra*, involving a claim, as in the case now before the Court, that the taxpayer's lands in Webster County were overvalued in violation of the "equal and uniform" clause of the state constitution (*W.Va. Const.* art. X, § 1), is this insightful language:

It is the policy of the State that the public revenues should be speedily assessed and collected in order that the government may function. The public revenues are the life blood of the body corporate, and the courts are slow to enjoin the assessment and collection of taxes unless a clear case is made [that the property is not subject to taxation or that the tax exceeds the constitutional limit], and equity will not ordinarily assume jurisdiction where there is an overvaluation.

87 W.Va. at 490, 105 S.E. at 794.

### IV

█ By enjoining the sheriff's sale in this case the circuit court exceeded its legitimate powers.[4] "A writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction exceeds its legitimate powers." Syl. pt. 1, *State ex rel. UMWA International Union v. Maynard*, 176 W.Va. 131, 342 S.E.2d 96 (1985). *See also* syl. pt. 2, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985) (and cases cited at 175 W.Va. at ——, 333 S.E.2d at 807).

For the reasons set forth in this opinion, we grant the writ of prohibition.

Writ granted.

NEELY, Justice, dissenting:

The Allegheny Pittsburg Coal Company believed that it had been grossly over assessed for 7,374 acres of coal property in Webster County. It timely contested the assessments before the County Commis-

---

**4.** We note that under *W.Va.Code*, 11–6–17 [1931], a court may enjoin, under certain circumstances, the collection of *ad valorem* taxes assessed against public service businesses. We also note the major revision of article 6 of chapter 11 of the *Code*, effective July 1, 1985.

Section 17 was not, however, expressly repealed. In any event, it is not applicable to *ad valorem* taxes on real and personal property under articles 3–5 of chapter 11 of the *Code*, which are involved in this case.

sion of Webster County. At the hearing the taxpayer introduced evidence that it was assessed at $3,000.00 per acre when comparable property in Webster County was being assessed at $60.00 per acre (a 5,000% overvaluation). The State Tax Department introduced evidence that comparable property was assessed at $360.00 per acre (an 833% overvaluation). We need not discuss whose evidence in closer to the mark. Under any view of the evidence, the assessment on the taxpayer's property was wildly out of proportion. Nonetheless, after reviewing this evidence the Board of Equalization and Review affirmed the assessments.

The Allegheny Pittsburg Coal Company and the successor owner of the property, the East Kentucky Energy Company, appealed to the circuit court which enjoined the sale of the property for unpaid taxes pending the court's ruling on the appeal.

Although it is well established in West Virginia that a suit cannot be brought in equity to restrain the collection of a tax on the sole grounds that the tax is improper or illegal, this Court has acknowledged that special circumstances can bring such cases within equity jurisdiction. *Douglass v. Town of Harrisville,* 9 W.Va. 162 (1870). Thus, standing alone, taxpayer's claim that the Board of Equalization and Review and the Assessor violated the State Constitution should not enable the circuit court to issue an injunction. *Christie v. Town of Malden,* 23 W.Va. 667 (1984). But a showing of actual or constructive fraud does entitle a taxpayer to equitable relief.

When a tax is so grossly excessive or discriminatory that it constitutes actual or constructive fraud on the part of the assessors, an injunction will issue. *Great Northern R. Co. v. Weeks,* 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532 (1936). We have stated: "It may be that when the statutory method for correcting assessments and equalizing them has been exhausted in instances where no jurisdictional questions arise, and when it is apparent that fraud in fact, on fraud presumed by law has been perpetrated by the assessing officers and which fraud is alleged and fully proven, that a court of equity would give relief."

*Pardee Curtain Lumber Co. v. L.P.B. Rose,* 87 W.Va. 484, 492–93, 105 S.E. 792 (1921).

The taxpayer in the present case has exhausted the statutory remedy and the gross over-assessment of the taxpayer's property indicates constructive fraud. The Assessor and the Board of Equalization and Review have, in sustaining the assessments over a period of ten years, systematically and intentionally assessed the taxpayer's real estate at a patently discriminatory rate. The taxpayer repeatedly brought the inequality to the attention of the assessor and the board of equalization. Although the taxpayer conclusively demonstrated that the assessment was erroneous, the assessor and the board of equalization refused to consider the evidence offered by the taxpayer.

Article X, § 1 of the *W. Va. Constitution* provides in part "taxation should be equal and uniform throughout the State ... no one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value." And the U.S. Supreme Court has stated that taxing by a uniform rule requires uniformity, "not only in the rate of taxation but also in the mode of the assessment upon the taxable valuation." *Greene v. Louis & Interurban R.R. Co.,* 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280 (1917). Uniform assessment is more than a rule of thumb, it is a constitutional mandate.

Injunction is an extreme remedy, and should be rarely used. There are strong policy reasons that restrain courts from enjoining the collection of taxes. The majority is correct when it notes that municipalities are dependent on tax revenues and restraining payment of taxes until resolution may cause some hardships. But civic expediency must be tempered by our constitutionally mandated principles of taxpayer equity. Accordingly, in cases such as the present one, when the over-assessment is so large that it suggests a fraud, injunction is a proper remedy.